# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **REUBIN E. LACAZE, JR.,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. CIV-20-1281-G |
| | ) |
| **THE CITY OF OKLAHOMA CITY et al.,** | ) |
| | ) |
|    **Defendants.** | ) |

## OPINION AND ORDER

Now before the Court is a Motion for Summary Judgment filed by Defendants Bill Weaver, Vance Allen, and Doug Kimberlin (Doc. No. 98). Plaintiff Reubin E. Lacaze, Jr. has submitted a Response (Doc. No. 113), and Defendants have submitted a Reply (Doc. No. 124). Having reviewed the parties' submissions, the Court makes its determination.

In March 2018, following a "demand suppression operation" by the Oklahoma City Police Department's ("OCPD") Vice Unit, a brown paper sack thought to contain methamphetamine and drug paraphernalia was not booked into evidence. Plaintiff, who was an OCPD sergeant and the officer responsible for booking the narcotics, became the subject of an investigation into the whereabouts of the missing evidence. At the end of the investigation, Plaintiff participated in a disciplinary proceeding called a "predetermination hearing" presided over by then-Deputy Chief Wade Gourley.

Following the predetermination hearing, Gourley sustained all allegations of misconduct against Plaintiff, which included allegations that Plaintiff had lost or thrown away "narcotic evidence," that Plaintiff had failed to notify his supervisor of the missing

evidence, and that Plaintiff was untruthful about what had happened to the evidence in an official police report and during the subsequent investigation.  Plaintiff was terminated for untruthfulness in September 2019 by Gourley, who was by then the OCPD Chief of Police.  Plaintiff was later reinstated to his position following an arbitration.

On December 22, 2020, Plaintiff initiated this federal lawsuit against Defendants City of Oklahoma City ("City"), OCPD Chief of Police Wade Gourley, OCPD Major Bill Weaver, OCPD Captain Vance Allen, and OCPD Lieutenant Doug Kimberlin.  *See* Compl. (Doc. No. 1).  In his Complaint, Plaintiff alleges claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964 against Defendant City, racial discrimination in violation of 42 U.S.C. § 1981 against all Defendants, and conspiracy to violate civil rights against all Defendants.  *See id.* ¶¶ 63-83.  Defendants Weaver, Allen, and Kimberlin now move for summary judgment on each of Plaintiff's claims against them.  Defs.' Mot. at 1.

I.  *Standard of Review*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence

admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

II.     *Undisputed Material Facts*[1]

      A.     The Demand Suppression Operation

Plaintiff, who is African American, began working as a police officer for the Oklahoma City Police Department ("OCPD") in 1993 and was permanently assigned to the Vice Unit in 2001, where he is currently a Master Sergeant/Investigator. *See* Defs.' Mot. Ex. 1 (Doc. No. 99-1) at 13:1-15; 15:16-24; Pl.'s Resp. (Doc. No. 113) at 26. In March 2018, the Vice Unit conducted a week long demand suppression operation targeting prostitution customers at various hotels in Oklahoma City. *See* Defs.' Mot. Ex. 1, at 17:1-13, 23:10-19. On the evening of March 28, 2018, as a result of the suppression operation, OCPD officers arrested Brandon Brawley for possession of methamphetamine and soliciting prostitution services at the Wyndham hotel. *See* Defs.' Mot. Ex. 7 (Doc. No. 98-7); Defs.' Mot. Ex. 5 (Doc. No. 99-5). Det. Jeff Coffey prepared the probable cause affidavit for Brawley's arrest (the "Brawley P.C. Affidavit"), and Off. Kelsey Lawson[2] and Lt. Kimberlin signed the affidavit. *See* Defs.' Mot. Ex. 7; Defs.' Mot. Ex. 8 (Doc. No. 99-7) at 34:1-13.

The probable cause affidavit states that upon Brawley's arrest, officers recovered a "small clear ziptop plastic baggie that contained a[n] off white crystal-like substance with a total package weight of 0.03 grams." Defs.' Mot. Ex. 7. The probable cause affidavit

---

[1] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to the applicable nonmoving party.

[2] Off. Lawson (now Brown) was the female officer posing as a prostitute who was propositioned by Brawley. *See* Defs.' Mot. Ex. 5, at 2.

4

further represents that "[t]he substance later field tested positive for Methamphetamine." *Id.* At the time Det. Coffey prepared the probable cause affidavit, however, the substance recovered had not been tested. Defs.' Mot. Ex. 8, at 34:17-25. Det. Coffey later testified in a deposition that he expected the substance would be tested prior to being booked into the property room. *Id.* at 35:1-7.

At the conclusion of the March 28, 2018 operation, Lt. Kimberlin assigned Plaintiff and Det. Alonzo Rivera to book the evidence from the evening's operation. *See* Defs.' Mot. Ex. 1, at 47:17-21. Before Plaintiff left the Wyndham, Det. Coffey handed him a brown paper sack, informing Plaintiff that the sack contained methamphetamine that had not yet been tested and two glass pipes. *Id.* at 47:22-48:7. According to Plaintiff, Det. Coffey asked Plaintiff to book the narcotic evidence into OCPD's property room but indicated that the two glass pipes could be disposed of. *See id.* at 48:1-7. Plaintiff took the sack from Det. Coffey and left the hotel with the evidence collected from that evening's operation. *Id.* at 67:6-14. Plaintiff and Det. Rivera arrived at the OCPD's Property Management Unit ("PMU") in the early morning hours of March 29, 2018, to book the evidence. *See id.* at 103:14-18, 157:4-14. The evidence collected on March 28th was booked into the PMU, with the exception of the narcotic evidence Det. Coffey had given to Plaintiff. *See id.* at 157:4-14.

On the morning of March 30, 2018, Det. Coffey asked Plaintiff for the "drug seal number" of the methamphetamine that was supposed to have been booked into evidence. *See id.* at 102:5-103:8. Plaintiff was not able to provide the drug seal number and told Det. Coffey, "If the meth was in the bag with those pipes, then it got thrown away, but I didn't

5

see it." *Id.* at 103:1-5.  Plaintiff then told Det. Coffey that he would prepare a report on the missing evidence.  *See id.* at 103:12-13.  The next day Plaintiff created a supplemental report within the OCPD Vice Unit reporting system, with the description "Lost Evidence – Brawley" on the front cover and containing the narrative "[t]he baggie of meth and meth pipes were misplaced prior to the booking process and were unable to be located."  Defs.' Mot. Ex. 12 (Doc. No. 99-9).

                    B.        The Administrative Investigation and Disciplinary Process

Lt. Kimberlin, the OCPD Lieutenant in charge of the Vice Unit from 2001 to 2021, reviewed the report on April 5, 2018, and reported the misplaced evidence to his supervisor, Capt. Allen of the Special Projects Group.  *See* Defs.' Mot. Ex. 2 (Doc. No. 99-2) at 15:10-12; Defs.' Mot. Ex. 3 (Doc. No. 99-3) at 14:22-15:1, 50:3-51:11.  Capt. Allen told Lt. Kimberlin to have the officers conduct a search through the evidence that was booked to see if they could find the misplaced evidence.  Defs.' Mot. Ex. 3, at 51:7-11; Defs.' Mot. Ex. 2, at 104:19-105:1.  Plaintiff, Det. Coffey, and Det. Rivera then unsuccessfully searched the PMU for the missing narcotic evidence.  Defs.' Mot. Ex. 1, at 132:5-20.

Lt. Kimberlin reported to Capt. Allen that the narcotic evidence was not found, and so Capt. Allen informed Maj. Weaver, the Major in charge of the Special Investigation Division in 2018, about the incident.  Defs.' Mot. Ex. 3, at 54:1-11, 55:10-56:16; Defs.' Mot. Ex. 4 (Doc. No. 99-4) at 11:5-12:25, 14:8-15:20.  Maj. Weaver advised that an administrative investigation would need to be conducted regarding the missing narcotic evidence and instructed Capt. Allen to assign Lt. Kimberlin to conduct the investigation.  Defs.' Mot. Ex. 3, at 55:10-56:16, 58:3-14.

On June 27, 2018, Lt. Kimberlin conducted an interview of Plaintiff with a Fraternal Order of Police ("FOP") representative present. *See* Defs.' Mot. Ex. 13 (Doc. No. 99-10). During this interview, Plaintiff indicated that he did not conduct a search upon realizing that the narcotic evidence was missing because if he had left the bag containing the narcotic evidence on the PMU room countertop, where he last recalled seeing it, someone would have found the sack and called him. *See id.* at 13:481-14:526. Subsequently, on September 27, 2018, Lt. Kimberlin and Capt. Allen interviewed Plaintiff again. Defs.' Mot. Ex. 15 (Doc. No. 99-11). In this interview, Plaintiff stated he threw away the paper sack in a dumpster located outside of the PMU, thinking the sack only contained glass pipes and no narcotic evidence. *See id.* at 6:251-266. Plaintiff stated that he realized that he threw the paper sack away when Det. Coffey asked for the drug seal number. *See id.* at 31:400-32:406. Capt. Allen met with Maj. Weaver and then-OCPD Chief Bill Citty on October 12, 2018, advised the Chief that Plaintiff had given inconsistent statements in the June and September interviews, and asked for direction on how to proceed. *See* Defs.' Mot. Ex. 3, at 151:11-19.

On January 30, 2019, Plaintiff was placed on Administrative Leave with pay. Defs.' Mot. Ex. 1, at 161:7-16. On April 9, 2019, Lt. Kimberlin and Capt. Allen conducted a third interview with Plaintiff, presenting Plaintiff with allegations of untruthfulness, which Plaintiff denied. *See* Defs.' Mot. Ex. 17 (Doc. No. 99-12) at 6, 9, 12. After the interviews were completed, Maj. Weaver, Capt. Allen, and Lt. Kimberlin briefed Chief Citty again. Defs.' Ex. 4, at 25:3-15. Chief Citty sent Plaintiff's case to a predetermination hearing and assigned then-Deputy Chief Gourley to be the hearing examiner. *See id.*; Defs.' Mot. Ex.

7

19 (Doc. No. 99-13) at 42:18-21.  Plaintiff then received a Hearing Notification from then-Deputy Chief Gourley.  *See* Defs.' Mot. Ex. 20 (Doc. No. 99-14).  The Hearing Notification contained allegations of misconduct regarding the lost evidence and Plaintiff's untruthfulness during the subsequent investigation.  *See id.* at 1.  Prior to the hearing, Capt. Allen sent the relevant materials gathered during the investigation to then-Deputy Chief Gourley.  Defs.' Mot. Ex. 3, at 146:17-147:15.

The predetermination hearing was held on May 19, 2019.  *See* Defs.' Mot. Ex. 22 (Doc. No. 99-15) at 1.  Capt. Allen was the presenter, reporting the facts gathered throughout the investigation, and Lt. Kimberlin was a witness.  *See id*. at 1, 5-7.  Maj. Weaver was not involved in the hearing.  Defs.' Mot. Ex. 4, at 26:16-22.  Plaintiff, who had a FOP representative present with him, was given the opportunity to present his own evidence and refute the allegations against him.  *See* Defs.' Mot. Ex. 22, at 41-51.  Plaintiff admitted that he had thrown the sack away, that the wording of his report was inaccurate, and that his actions showed a lack of judgment, but Plaintiff insisted that he did not intend to mislead anyone.  *See id.* at 42-48.  Plaintiff explained that he was frustrated and embarrassed, which led to his lapse in judgment, admitting he knew that he should have stated in his report that he threw the bag away.  *See id.*

Deputy Chief Gourley presented his findings sustaining the allegations against Plaintiff to then-interim Chief Jeff Becker.  *See* Defs.' Mot. Ex. 23 (Doc. No. 99-16).  Gourley represents that Defendants Weaver, Kimberlin, and Allen did not attempt to influence his findings.  *See* Defs.' Mot. Ex. 19, at 104:5-19.

In July 2019, Deputy Chief Gourley was appointed as OCPD Chief of Police. Defs.' Mot. Ex. 19, at 6:11-13. No decision on the findings of the predetermination hearing had been made in the interim. On September 5, 2019, Plaintiff was terminated by Chief Gourley for untruthfulness. *See* Defs.' Mot. Ex. 24 (Doc. No. 99-17); *see also* Defs.' Mot. Ex. 19, at 78:1-3.

Subsequently, following an arbitration proceeding, Plaintiff was reinstated to his position as a sergeant/investigator with OCPD. Compl. ¶ 62.

### III.    Discussion

Plaintiff alleges claims of racial discrimination in violation of 42 U.S.C. § 1981 and conspiracy to violate civil rights against Defendants Weaver, Allen, and Kimberlin individually. *See* Compl. ¶¶ 71-83. Defendants now move for summary judgment in their favor on these claims.

####    A.    Racial Discrimination in Violation of 42 U.S.C. § 1981

Section 1981 prescribes that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (internal quotation marks omitted).[3]

---

[3] "A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written

9

Crucially, "[a] claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds by Kendrick*, 220 F.3d 1220. Personal involvement requires that "[t]here must be some affirmative link to causally connect the actor with the discriminatory action." *Id.*

Defendants Weaver, Allen, and Kimberlin argue that Plaintiff cannot establish that they were personally involved in the discriminatory action alleged as the basis of Plaintiffs' claim: the decision to terminate Plaintiff. *See* Defs.' Mot. at 22. In his Response, Plaintiff argues that these Defendants were "intimately tied with the decision" to terminate Plaintiff because Lt. Kimberlin conducted the investigation, Capt. Allen reviewed and approved the investigation, Lt. Kimberlin testified at the predetermination hearing, Capt. Allen acted as

---

statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides the analytical framework for claims of disparate treatment involving circumstantial evidence of discrimination, as are at issue here. Under this framework, the plaintiff must first establish a prima facie case of discrimination. *See id*. at 802. If the plaintiff satisfies this initial burden, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its decision. *Id*. Then, if the defendant meets this burden, "summary judgment is warranted unless [the plaintiff] can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). But because the summary-judgment record does not support that Defendants Weaver, Allen, and Kimberlin were personally involved in Plaintiff's termination, the Court need not engage in the *McDonnell Douglas* burden shifting framework.

a presenter at the predetermination hearing, and all three attempted to "construe the evidence in the harshest way possible" against Plaintiff. Pl.'s Resp. at 32.

"Personal liability may be imposed under § 1981 on an individual supervisor or manager who is personally involved in an employee's discriminatory . . . termination, even though the individual did not have final decision-making authority." *Ford v. Just. Alma Wilson Seeworth Acad.*, No. CIV-08-1015-D, 2010 WL 545871, at *2 (W.D. Okla. Feb. 9, 2010). "Personal involvement sufficient for § 1981 liability may be shown by evidence of a causal connection between an individual's recommendation that an employee be terminated and the termination decision." *Id.*; *see also Wulf v. City of Wichita*, 883 F.2d 842, 864 (10th Cir. 1989) (finding that a defendant who recommended that the plaintiff be terminated was sufficiently personally involved in the decision to terminate the plaintiff); *Houston v. Indep. Sch. Dist. No. 89 of Okla. Cnty.*, No. CIV-08-374-D, 2010 WL 988406, at *4 (W.D. Okla. Mar. 12, 2010) (finding that the plaintiff sufficiently showed two defendants' personal involvement even though neither had final decision-making authority when the record supported that both defendants "sought" the plaintiff's termination).

Here, the summary-judgment record contains no evidence that Defendants Weaver, Allen, or Kimberlin ever recommended that Plaintiff be terminated or sought Plaintiff's termination. Even construed most favorably to Plaintiff, the evidence reflects that the only contact these Defendants had with decisionmakers regarding Plaintiff was briefing on the status of the investigation and presenting evidence at the predetermination hearing. *See* Defs.' Mot. Ex. 3, at 151:11-19; Defs.' Mot. Ex. 22; Defs.' Mot. Ex. 19, at 42:18-21; Defs.' Ex. 4, at 25:3-15; Defs.' Mot. Ex. 19, at 104:5-19 (representing that Defendants Weaver,

Kimberlin, and Allen did not attempt to influence Gourley's findings sustaining the allegations against Plaintiff). Further, Chief Gourley made his decision to terminate Plaintiff months after the predetermination hearing and investigation concluded. *See* Defs.' Mot. Ex. 22, at 1; Defs.' Mot. Ex. 24.

Plaintiff has provided no authority to support the proposition that a defendant's mere involvement in an administrative investigation or a disciplinary proceeding may establish personal involvement in a discriminatory action as required by § 1981. Even viewing the evidence in the light most favorable to Plaintiff as the nonmovant, Defendants Weaver, Allen, and Kimberlin's involvement in the administrative investigation and predetermination hearing is not enough, by itself, to tie these Defendants to the actual decision to terminate Plaintiff. *See Thomas v. City of Blanchard*, 548 F.3d 1317, 1328-29 (10th Cir. 2008) (finding no personal involvement where the summary judgment record contained no evidence supporting that the defendant was a participant in the decision-making process that led to the plaintiff's termination).

Accordingly, in the absence of a causal link between Defendants Weaver, Allen, and Kimberlin and the decision to terminate Plaintiff, or evidence establishing a question of fact as to whether these Defendants' conduct went beyond mere participation in an investigation and a hearing, the record does not show that these Defendants were personally involved in the discriminatory action. Accordingly, they cannot be held personally liable under § 1981.

B.     Conspiracy to Violate Plaintiff's Civil Rights

In his conspiracy claim, Plaintiff alleges that "[t]he Defendants, either implicitly or explicitly, entered into an unlawful agreement to deprive Lacaze of his federal rights by agreeing to cause Lacaze's termination because of his race, African American," and that "[t]he Defendants each took an overt act in furtherance of the conspiracy." Compl. ¶¶ 80-81.

While the Complaint does not specify, Plaintiff presumably brings his conspiracy claim pursuant to either 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3). "[A] federal conspiracy action brought under either [§ 1983 or § 1985(3)] requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010), *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021). Further, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants because conclusory allegations of conspiracy are insufficient." *Id.* at 1228 (alteration and internal quotation marks omitted).

In his Response, Plaintiff argues that a rational juror could find that Defendants City, Gourley, Kimberlin, Allen, and Weaver conspired to cause Plaintiff's unlawful termination because "[t]hey were all aware that there were serious policy violations by other officers, but they each acted to minimize those violations and shield white officers from scrutiny." Pl.'s Resp. at 34. Specifically, Plaintiff contends that "Kimberlin's report

13

intentionally and falsely explained the reason the PC affidavit was false, in an effort to blame Lacaze." *Id*.

As explained in the Court's concurrently issued Opinion and Orders, Plaintiff offers no specific facts and points to no evidence supporting the existence of an agreement or concerted action amongst the defendants to minimize the referenced violations. Additionally, Plaintiff's argument that Lt. Kimberlin's report was false implicates only Lt. Kimberlin.

For the above reasons, and as the record reflects no genuine dispute for trial, Defendants Weaver, Allen, and Kimberlin are entitled to summary judgment on Plaintiff's conspiracy claim pursuant to Federal Rule of Civil Procedure 56.[4]

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. No. 98) is therefore GRANTED. A separate judgment shall be entered at the conclusion of the case.

IT IS SO ORDERED this 29th day of March, 2024.

_____
CHARLES B. GOODWIN
United States District Judge

---

[4] In light of this disposition, the Court need not reach Defendants' assertion of qualified immunity.